## SCOTT, HARPER & CO. v. DANSBY.

1. An obligation, signed with the partnership name, but in the body of which it is recited, that it was the act of one of the partners, and given as a security for his individual debt, is not on its face a partnership act.

2. A mortgage being executed in the name of a partnership, by one of the partners, it is not competent to prove the admissions, either of the mortgagee, or the partner who executed it, that it was made to secure a debt due by the firm.

3. Upon a bill filed to subject property as belonging to a partnership, to the payment of a debt alledged to be secured by a mortgage of the partnership, no decree can be had, upon proof that the property belongs to one of the partners, individually.

Error to the Chancery Court of Greene.

THE bill was filed by the plaintiffs in error, to foreclose a mortgage, alledged to have been made by E. & I. Dansby ; on certain slaves, and alledges a sale by the complainants to E. & I. Dansby, of certain slaves, which were to be paid for at certain periods, and for the payment of which certain bills of exchange were drawn. That the bills of exchange were not paid at maturity, and were duly protested, and that on application of the complainants to E. & I. Dansby, they agreed to secure him by giving him a *lien* on the slaves, and for that purpose, executed the following instrument, on the 5th June, 1837 :

*State of Alabama, Washington county.* Know all men by these presents, that for and in consideration of the sum of $4,865 20, in full payment for a certain lot of negroes, named as follows : [here follow the names and description,]— which negroes I warrant to be sound in body and mind, as when purchased of Scott, Harper & Co., in whose favor this obligation is also drawn ; and I do also warrant and defend, the right and title of the above named negroes, to the said Scott, Harper & Co. The condition of the above obligation, or title, is such, that whereas, I, Elijah Dansby, am indebted

to Alexander Scott, in two bills of exchange, one dated 2d January, at ninety days, addressed to Jacob Boyd, at Mobile, endorsed by Richard Compton, Isham Dansby, and James C. Drew, with three credits, amounting in all, to $1,187 80. The balance, a bill of exchange for three thousand dollars, drawn the 3d January, on Jacob Boyd, and endorsed as the other above named. Now, so soon as the above bills of exchange be paid, with lawful interest to the said Scott, then the above transfer to be null and void, if otherwise to operate only as a *lien* on the above named negroes, and the said negroes to be kept in possession of Elijah Dansby, and forever to be held liable to said debt, until the whole is paid, or so much thereof as will secure the said debt. In testimony whereof, I have hereunto set my hand, and seal, this 5th January, 1837.

E. & J. DANSBY.

Teste, W. G. COLE.

SAMUEL LEE.

This instrument was recorded in Washington county, where the negroes were at the time it was made, and it is alledged, " was signed by the said Elijah Dansby, with the firm name of E. & I. Dansby, and was so signed with the knowledge, and by the authority of the said Isham Dansby, or if not by his authority, the said Isham, upon being informed thereof, assented to, and acquiesced in such signature, and the execution of said mortgage."

The bill further charges, that the bills of exchange were not fully paid off; that judgment was obtained thereon, and a portion, which is set forth, is still unsatisfied. That in the spring of 1839, E. & I. Dansby sold the said slaves to Isaac Dansby, with full knowledge on his part of the mortgage, who carried them all out of the State except two, which are described, which he carried to Marengo county, where they still remain in his possession. That John L. and M. Burwell have obtained a judgment against E. & I. Dansby, and have caused the said two slaves to be levied on, and that Isaac Dansby has claimed them as his property, and given bond to try the right. That the complainants are informed, and believe, that Elijah, Isham, and Isaac Dansby, have each of them run off, and removed their property from this State, to avoid

the payment of their debts, and that the security given by the said Isaac, to have the slaves forthcoming to abide the judgment of the court, is insufficient, and have reason to believe, that the slaves will be removed out of the State, so as not to be subject to their mortgage. The prayer of the bill is for an injunction against the removal of the slaves, &c.

J. L. & M. Burwell answer the bill, and deny all knowledge of the mortgage, and require proof of the allegations of the bill, in relation to it. They admit the levy on the slaves in virtue of the judgment obtained by them, against E. & I. Dansby, and insist on their right to sell, &c.

Decrees *pro confesso* were rendered against Elijah and Isham Dansby.

The deposition was taken of Lee, one of the subscribing witnesses to the mortgage, who proves, that Elijah Dansby signed the firm name of E. & I. Dansby to the mortgage, Isham Dansby not being present. That he heard both Scott, and Elijah Dansby say, that the slaves were purchased from the former, by the firm of E. & I. Dansby.

The chancellor dismissed the bill, because no authority was shown authorizing E. Dansby to execute the mortgage in the name of the firm. This is now assigned as error.

HENLY, for plaintiff in error, insisted—

1. That it is shown by the bill, answers and proof, that the slaves mortgaged to the complainant's by the instrument set out in the bill, were sold by the complainants to *Elijah Dansby*, for the firm of E. & I. Dansby.

2. That at or about the same time *Elijah Dansby* executed the mortgage set out in the bill, to secure to the complainants the debt contracted in the purchase of said slaves.

3. That the slaves having been purchased as partnership property, Elijah Dansby, one of the co-partners, was fully authorized to pledge or mortgage them to secure a partnership debt. [Story on Part. 144, *et seq.*]

4. That if Elijah Dansby was authorized to pledge or mortgage the partnership property, then the instrument set out in the bill is properly executed. It is a mere security in the nature of a mortgage, and does not appear to have been

sealed. The property conveyed was personalty, and it was not necessary that the instrument should be sealed.

5. That even if it shall be held that the instrument is a sealed instrument, still it is good to bind the firm of E. & I. Dansby, as it would have been effectual without a seal, and the addition of a seal cannot vitiate it. [St. on P. 178, 179 ; Lucas v. Bank of Darien, 2 Stew. Rep. 280 ; Ib. 296-7-8.]

6. That if it shall be held that the mortgage was not properly executed to bind the firm of E. & I. Dansby, yet being executed by Elijah Dansby, in his own person, it was certainly effectual to convey his interest in the slaves—that though it might not bind the firm of E. & I. Dansby, it clearly bound him. The chancellor ought therefore at least to have separated the interest of Elijah Dansby in the slaves conveyed by the mortgage, and have decreed a foreclosure at least so far as that interest extended. [Story on P. 150, 176, 179.]

F. S. Lyon, contra.

The complainants charge in their bill, that E. & I. Dansby, *partners*, made the mortgage in controversy, that it was signed by Elijah Dansby, with the firm name of *E. & I. Dansby*, and was so signed with the knowledge, and by the authority of Isham, the other partner.

Isaac Danby claimed title to the slaves mentioned in the mortgage, and they were levied upon as his property to satisfy Burwell's execution. The mortgagees enjoined the sale.

Process was served on Isham Dansby, and the bill as to him taken *pro confesso*, and publication was made as to Elijah Dansby, and the bill as to him taken as confessed. The Messrs. Burwell answered.

The judgment *pro confesso* against E. & I. Dansby amounts to an admission of the execution of the mortgage, as alledged in the bill, so far as they are concerned—but does not prove the assent of Isham Dansby, as against the Messrs. Burwell, the plaintiffs in execution, and parties, defendants to the bill.

The testimony does not establish the execution of the mortgage by the two mortgagors, nor does it show the assent

of the partner who did not sign—such proof was necessary as against the defendants, Burwells.

One partner cannot bind another by an instrument under seal. Hence the decree in favor of the respondent was proper.

It is insisted that there is no proof in the record, showing that the slaves were purchased as partnership property, or that they belonged to the firm of E. & I. Dansby.

ORMOND, J.—The object of the bill is, to have the benefit of a mortgage alledged to have been made by E. & I. Dansby, on certain slaves, to secure the payment of a debt due by them to the plaintiffs in error. The instrument on its face purports to be made to secure a debt due from Elijah Dansby, to Scott, Harper & Co., and stipulates for his possession of the slaves mentioned in the mortgage, subject to the *lien* then created. It is signed with the firm name of E. & I. Dansby, and it is alledged in the bill, that this was done by Elijah Dansby, with the approbation of I. Dansby, or that he afterwards assented to it. There is no proof of this allegation of the bill, and in our judgment it cannot be inferred from the mere fact that the partnership name is signed to this instrument, that it is an obligation entered into by the partnership, when the body of the instrument shows it to be the act of Elijah Dansby, and to be given as a security for his individual debt.

Being the act of one partner professing to bind the firm, it was certainly necessary to establish, that the debt thus acknowledged was a debt due by the firm, and that the property conveyed was partnership property. The only testimony offered, is that of the subscribing witness, Lee, who states, that he was informed both by Scott, the mortgagee, and E. Dansby, the mortgagor, that the slaves mentioned in the mortgage, were sold by Scott, Harper & Co. to E. & I. Dansby. The statement of Scott was clearly inadmissible to prove this fact against a creditor of the firm. As the mortgagee, taking the obligation of one of the firm, for the payment of a firm debt, he has a direct interest in establishing it. The admissions of E. Dansby are only admissible so far as they relate to, or qualify his possession of the slaves. The

admission of one in possession of property, that the title is in another, is admissible, either as a part of the *res gestae*, or as a declaration against his interest; but it has never been supposed that it was competent for a party to prove by his own declarations, the nature of his own title, though he might admit that he had none, and the title was in another. This question was fully considered in McBride and wife v. Thompson, 8 Ala. R. 650, where it is said the declaration of the person in possession is only proper to qualify or explain the possession, but that " declarations as to the title, how, when, and from whom he acquired it, are inadmissible." See also, this question further considered in Abney v. Kingsland, 10 Id. 360. It is quite obvious, the declaration of E. Dansby, here relied on, goes beyond the limit here assigned to this species of evidence. It does not merely relate to, and qualify the possession of the slaves, but it goes to his own title, and the manner of its acqusition.

The declaration of E. Dansby would not be competent testimony to prove that he owed this debt to Scott, Harper & Co., as against a creditor whose debt then existed, but was clearly incompetent to prove that it was a partnership debt, as he had a direct interest in fixing a joint liability upon his co-partner. It may also be doubted whether any portion of this admission is competent testimony against his co-defendants, the Burwell's, as it is very clear it would not have been, if repeated in an answer to the bill.

There is then, no competent proof in the record, that the debt secured by this instrument was due from the firm of E. & I. Dansby, or that the slaves mortgaged were partnership property.

But it is contended, that the chancellor should at least have decreed the sale of the interest of E. Dansby in the slaves, as there can be no doubt that he executed the mortgage, and the slaves were either his own individual property, or the property of the firm. The complainants must recover according to the allegations, and proof. The allegations of the bill are, that the mortgage was executed in the part-

nership name, to secure a partnership debt, conveying for that purpose the partnership effects. There is not, as we have seen, any competent proof of these allegations of the bill, and if there was proof that these slaves were the individual property of E. Dansby, and that the debt to secure which the mortgage was made, was his individual debt, no relief could be had upon this bill as it now stands.

The decree of the chancellor dismissing the bill must be affirmed.