# Milhouse *et al. v.* Weeden.

*Bill in Equity for an Account, and Sale of Lands to Recover Money paid out of wife's Statutory Separate Estate.*

1. *Variance; when fatal.*—Where the bill avers a *statutory* separate estate in complainant by inheritance from her deceased father, and the proof shows an *equitable* separate estate, the variance is fatal.

2. *Wife's statutory separate estate; investment for her benefit; when not set aside.*—Where a purchase is made by a husband for his wife, with the intent that it should be paid for by the products of the lands, as far as they would go, and the rest with her means, and when the land was paid for, the title to be made to her—reluctance on the part of the wife to close the contract because the price seemed excessive, is no ground for her afterwards to

[Milhouse et al. v. Weeden.]

set aside the investment in equity, since the statute (section 2709 of the Code) authorizes the husband to invest the proceeds of the wife's statutory estate for her benefit.

APPEAL from the Chancery Court of Dallas. Heard before the Hon. CHAS. TURNER.

BROOKS & ROY, for appellants.

MORGAN, LAPSLEY, and NELSON, *contra*.

STONE, J.—The bill avers that Mrs. Weeden's separate estate came to her " by inheritance from her deceased father;" and that some ' fifty-eight hundred dollars—being $2,000 raised from Hill, and $3,800, the amount of decree against Davis—all her means, were invested in the purchase of the lands in controversy, by Dr. Weeden, husband of complainant, against her objections. That Weeden was induced by certain named parties to purchase said lands for complainant, and " to avoid and overcome any difficulty that might arise from the incapacity of [complainant] to bind herself by contract," the purchase and title were placed in the name of Mrs. Sallie Blackwell, mother of complainant. The answers deny that the property came to Mrs. Weeden by " inheritance from her father," and set up and prove that she acquired the property under the will of her father, which secured the same to, her sole and separate use. The bill avers a statutory separate estate, and the proof shows an equitable separate estate. The rights and powers of the wife under these two estates are so different, that this itself constitutes a fatal variance. *Williams v. Hatch*, 38 Ala. 338; *Norris v. Smith*, 41 Ala. 340; 1 Brick. Dig. 743.

The testimony in this record is so conflicting, as not to be reconcilable under the most charitable interpretation. We think the purchase was made by Dr. Weeden for his wife, with the expectation and intent that it should be paid for by the products of the lands, as far as they would go, and, beyond this, with her means; that the title was taken in Mrs. Blackwell, to obviate a legal difficulty; and that when the lands were paid for, the title was to be made to Mrs. Weeden. Both Mrs. Weeden and her mother were somewhat reluctant to close the contract of purchase, on account of the sum promised, which was, in their opinion, considerably in excess of the value of the lands; but, to spare Dr. Weeden's feelings and reputation, they yielded a reluctant assent, and perfected the contract of purchase. The deed signed by Mrs.

[Barnes v. Hudman.]

Blackwell to Mrs. Weeden, and left in escrow with Mr. Ward, is strongly confirmative of this view, while it secures the lands to Mrs. Weeden, should they be paid for. Reluctance, or objection to a contract, such as is shown in this record, will not authorize a wife to renounce an investment made by her husband for her, under section 2709, Code of Alabama.—See *Coleman v. Smith*, December term, 1876.

Even if the estate of Mrs. Weeden was statutory, as averred in the bill, the facts of this case, ascertained above, bring it clearly within the principle of an investment, by the husband, of the proceeds of the wife's statutory separate estate, which the law allows him to make.—*Marks v. Cowles*, and *Pylant v. Reeves*, December term, 1875; *Sterrett v. Coleman*, December term, 1876.

Ordinarily, we would render a decree here, dismissing complainant's bill for the variance, and for want of equity; but inasmuch as there is a receiver in the cause, whose accounts have not been settled, we feel it our duty to remand the cause, that the chancellor may close the receiver's accounts, before disposing of this cause finally, in accordance with the principles declared above.

Reversed and remanded.